Very well. Is this Ms. Scoville? Yes, Your Honor. All right. How are you all dividing your time? Same way as your predecessors? No, Your Honor. I will be delivering opening for 10 minutes, and I'd like to reserve 5 minutes for rebuttal, which will be delivered by Priyanka. Okay, so you're going to have 10 minutes, and there's 5 minutes for rebuttal. What's she going to do? You have 15 minutes in the aggregate. Yes, I will be delivering opening for 10 minutes, and she will be doing rebuttal. Okay, so you're not saving any rebuttal time. No, we're saving 5 minutes for rebuttal. Okay, I'm having trouble with the math here. Sorry, she will give you 10 minutes, and then 5 minutes for rebuttal. Oh, I understood. I got it. Okay, very well. I apologize for my lack of following that one. Okay, please proceed. Good morning, Your Honors. May it please the Court. Delia Scoville on behalf of Celia Alvarenga. Delia is entitled to relief under the Convention Against Torture. In denying her claim, the immigration judge made several errors, each of which require reversal. First, the immigration judge rejected the testimony of the expert witness without providing a reasonable explanation. Under Castillo v. Barr, that is per se reversible legal error. Excuse me, counsel. Why do you say that happened? I don't see the discounting of the testimony at all. She talked about it, and then she balanced her testimony with the petitioner's improved mental health or sobriety or educational background and her work history, and her testimony regarding the support of her mother. What more could be asked of the I.J. in this situation? Your Honor, the immigration judge expressly states that Dr. Garcia never personally met with or interviewed Celia. That's one of the reasons for discounting it. But she took it into account, and then she balanced it with the other factors that I just mentioned here. So she weighed the evidence. She found that Dr. Garcia's testimony may have been less valuable because she never met with her. She just read the evidence. But she fulfilled her responsibility, didn't she? Your Honor, while it may be that she did weigh the evidence, the explanation she gave for discounting that testimony was that she never personally met with or interviewed Celia. And per Castillo, that is not a reasonable basis for rejecting or discounting expert testimony. Why not? It doesn't seem illogical. If the issue is whether these projections of what might happen in the future  and the fact that the expert can speak in general terms but really doesn't have specific knowledge about the individual at issue seems to me to be not illogical. Your Honor, the expert in this case based her conclusions on fixed characteristics about Celia provided in her declaration, including her long history of substance abuse, her diagnosed mental illnesses, which include PTSD and bipolar disorder, her past torture in a Mexican rehabilitation facility, and her gender. Furthermore, the expert based her conclusions on her extensive study of these facilities across the country and her interviews with hundreds of patients and the ways in which those patients were institutionalized. She concluded that Celia was extremely likely to be reinstitutionalized and very likely to be tortured there. How does knowledge about the institution speak to what's going to happen to a particular individual? Your Honor, several things. First, the expert's knowledge is also about the types of patients who end up institutionalized and the pathways by which those patients are institutionalized, which includes vulnerable factors such as histories of substance abuse, a likelihood of homelessness, mental illnesses, and lack of resources and support. Didn't the expert witness make a number of concessions on cross-examination such as the current government in Mexico does not support or promote such facilities and there's been discourse since 2015 about the Mexican Army attempting to shut them down and that she noted that state-run facilities tend to be similar in quality but that she didn't believe that Petitioner would actually be committed to one. Yes, Your Honor. On cross-examination, the expert witness did discuss government acquiescence. I'd like to clarify a point on cross-examination. The expert witness testified that the prior administration had made explicit statements about trying to shut down these facilities, but that as of the time of her testimony, the Lopez Obrador administration had not made any such statements. What's more, government acquiescence may be satisfied without an official policy condoning torture. Willful blindness and an inability to address the situation is enough, per this court's case law in Accusung v. Barr. And here, the country conditions reports document the abuses in these facilities and the government's inability and unwillingness to deal with those abuses. Counsel, with respect, we get lots of cases about people who have mental illness who are sent back to Mexico and about the conditions there, but this one is a little less troubling in the sense that CRED, however you say it, is a private institution. It's not a governmental institution.  It does not implicate the government. There's no evidence in the record that I'm aware of that says the government sent her there or that it acquiesced in the treatment that she got there. What you have is speculation based upon country reports, which, of course, are, as my colleague pointed out, there have been some improvement. And tying her to that, particularly with the other findings that the IJ made, that's a real stretch. We've got to tie it to her and a governmentally sanctioned mental institution, do we not? Your Honor, while it is true that Celia was not previously committed by a government official, the record evidence, including Dr. Garcia's testimony and the country conditions reports document that government officials are actively involved in committing vulnerable individuals. Well, they may be, but not in this case. I mean, there's no evidence that it did that in this case, right? It was her mother. Not in Celia's past torture, that's correct. However, the expert witness testified to several potential likely future routes by which Celia would be institutionalized. Okay, but in this case, unlike the previous case,  this is a private institution. She was placed in the institution by her mother, right? That's correct, Your Honor. So there's no past torture. There's no presumption of future torture. Would you agree with that? Your Honor, the immigration judge did conclude that the treatment Celia received in CREAD rose to the level of torture. And while the government— Okay, but it's a private institution. Yes. No acquiescence. So let's say there was torture. There's no presumption created by that, is there? While Celia was not previously committed by a government official, it is clear from the record that the government is involved in committing vulnerable deportees to such privately run facilities and that the government is aware of and has done nothing to address the conditions in this facility. In this case? The evidence, yes, is about conditions that face vulnerable deportees like Celia. Again, Your Honor is correct that Celia was not committed in the past by a government official, but that does not change the government's acquiescence in the conditions that rise to torture in these facilities. But you're speaking, with respect, my understanding is you're speaking of conditions generally in Mexico, right? Conditions generally in Mexico, but specifically that impact deportees who are situated like Celia is likely to be if she is deported, namely individuals who suffer from histories of substance abuse, diagnosed mental conditions, and have lack of support and resources in Mexico. I'd like to point Your Honor's attention to our 28-J letter that addresses a recent case, Iglesias-Iglesias, which finds that the conditions, even in privately run institutions, rise to the level of torture and that government acquiescence is satisfied in those cases. Excuse me, what case law do you cite that says that if you have a privately owned institution and the person was committed there by a private individual, that the government has been found to have acquiesced in it? What cases do you cite? Your Honor, that is not what I was asking. I'm sorry, maybe I misunderstood. The government, or this court in Iglesias-Iglesias, found that the conditions in Mexican mental health facilities rose to the level of torture and that the government acquiesced in the torture of those individuals. Okay, but again, this is, with respect, this is the generality. And if you look at our case law, whether it's the way it should be or not, the reality is our case law doesn't tie to individual cases the reality that there is a lack of good mental health treatment in Mexico. Some people have made that allegation about our country. I don't know whether we'd make that claim if somebody here, they're out on the street, maybe right next door here in the Tenderloin, and we don't put them in the mental institution. And when we do, they say we don't do enough. It's got to be more specific, does it, not to tie to this particular petitioner? Your Honor, there is specificity here. Again, Celia has been institutionalized in the past. The characteristics that make her vulnerable to reinstitutionalization are characteristics that similarly mean that government will willfully acquiesce in her future torture. Again, the record shows that the mayor of Tijuana himself has been involved in ordering homeless encampment sweeps that result in thousands of deportees being forcibly committed to reinstitution facilities. Similarly, the record evidence shows that in overcrowded jails, police officers are often involved in shunting individuals into facilities without their consent, and that in migrant shelters, overcrowding often results in dumping of deportees into rehabilitation facilities, privately run rehabilitation facilities. The record also shows that Celia is likely to experience the kinds of vulnerabilities that would lead to her reinstitutionalization with the acquiescence of the government. Your time is up. Do either of my colleagues have questions of Ms. Scoville? Very well. So you're going to have your colleague come up now, is that right? Or are you going to wait until afterwards? Very well. Okay. All right. All right, so let's hear from Mr. Nzinga. Is that correct? Yes, Your Honor. Can you hear me? Yes. Thank you. Good morning, Your Honors. May it please the Court, Andrew Nzinga on behalf of the Attorney General of the United States. In this case, a reasonable fact finder is not compelled to conclude that someone with petitioner's history is more likely than not to end up being tortured. Petitioner tries to fill the gaps with argument, which are not evidence, and also tries to fill the gap by discussing acquiescence, which is not currently before the Court. Petitioner also has conflated credibility and sufficiency while ignoring half of the Supreme Court's holding in Nzinga. First, Your Honor, per Maldonado, it needs to bear some emphasis that unlike asylum and withholding, CAT does not have any presumption that needs to be rebutted. CAT involves a multi-factor test, and past torture is one of those indications. The immigration judge conducted the analysis as required and considered a variety of factors and all the relevant evidence and found simply that what petitioner has claimed will happen is a possibility, but not more likely than not. First, in being with these past torture events, it's as petitioner claims, will have occurred nearly 20 years before she will be removed in 2024. In this case, she was tricked into a facility, not by the government, by her own mother, who is not a government actor, obviously. And in fact, petitioner has repeatedly said that she trusts and relies on a mother who supports her. So this has no particular relevance about what will or what would be more likely than not to occur in the future. The mental health petitioner focuses on generic claims that she has a mental health issue. But here the issue is a petitioner did not know how to get medication. There's no evidence that medication is not unavailable. In fact, petitioner's 20-J is enlightening in the sense that that case dealt with someone who claimed that they were over-medicated. There's just no evidence that her particular medications are not available in Mexico. And again, it bears emphasis that this is a burden of proof. She can't simply say, well, I don't know, and say the record compels reversal. A reasonable fact finder is not compelled by such guesswork. Can you separate out in this case the mental illness from the substance abuse? Because I thought the argument went like this. I'm going to be stressed out by homelessness and being in a country where I have few ties. I'm likely to relapse on drugs, and that will trigger a mental health spire. I didn't see an easy way to kind of segregate out substance abuse and mental health. Do you see one? No, Your Honor. Again, sometimes the difficulty in discussing a multi-factor test is because we live in a fourth-dimensional world, we must run through them one at a time. But at the end of the day, we kind of really have to consider them together. So we can't really separate the concepts of, because petitioner's expert did not, and petitioner herself did not, and there are arguments the board did not, did not separate these out to clear, distinct ways of ending up in some facility. They're related. And one of those things we consider is mental health. One of the things to consider is what happened in the past, except it was her mom who put her in the facility, unfortunately. We also consider her drug use, but petitioner testified that she's been sober since 2016, despite her claim that there are drugs available in her federal prison. So petitioner has agency in this case to make better decisions, and petitioner claimed that's just what she wanted to do. And again, by the time she's released in 2024, she will have been in federal prison seeking assistance for eight years. So a final, a further consideration is the concept of interim relocation under Maldonado. In this case, petitioner has had real jobs outside of drug trafficking. She has a GED. She took some college courses. She speaks Spanish. Now, petitioner has often tried to suggest that the government suggests that any of these factors are it. The end of the discussion, it's not, Your Honor. As the immigration judge recommends, it's simply one factor that is relevant in this situation about whether she can avoid those complex issues of mental health and homelessness and not having a job and these complex issues. Further, one other relevant factor was that she had the support of her mother. Now, petitioner encounters with sort of a consistent claim she has no family support. There's just no evidence of that. It also bears emphasis when someone says, I have no family support, petitioner has failed to mention that she has 11 siblings. She has a father, a stepfather, and several children who are adults. Now, the immigration judge not relied on it. But when petitioner claims in a brief there is no family support, the problem is there's no evidence of such a suggestion because we don't know. But what we do know is the mother is supportive, and petitioner repeatedly testified that she relied on her despite the unfortunate incident where the mother tricked her into the private really run mental health facility. Further, petitioner relies on her own opinions and the opinion of the expert witness. Part of the issue that seems to be coming with the argument petitioner presented is petitioner is using the verb rejected. The immigration judge did not reject the expert in a sense of not allowed into evidence or anything like that. The immigration judge considered it, but simply found it less persuasive. And that's particularly relevant in the case where the expert testified before petitioner, and then petitioner testified. So the immigration judge undeniably is hearing evidence that the expert could not have considered. Fundamentally, it's temporally impossible. So the immigration judge did not reject in the sense of finding it irrelevant or not admissible. It simply found it less persuasive. That is the job of fact finder, be it a jury, an immigration judge, or just a court judge. And then this court's role is not to simply say we just don't like that or we personally might not reach that decision. The issue is a reasonable fact finder compelled to find that opinion to overwhelm the other evidence. Again, an overarching issue here that petitioner has not delved into unsurprisingly is the repeated ignorance, ignoring of Ming Dai. Ming Dai was last year's most important case in immigration law, Your Honor. But the opening brief ignores it and consistently repeats that any opinion is dispositive. Any concept like that has been overruled. Now, petitioner's reply brief comes back and says, well, that conflict only occurs when you have conflicting evidence. That is starkly wrong. And all I can simply say is I will happily end the rest of my time and ask the court simply to read Ming Dai. This petitioner seems not to have done so. The court said, and I'll quote, this court erroneously allowed credibility to operate as a trump card, foreclosing the possibility that even credible testimony may be outweighed by other more persuasive evidence. Now, that's what petitioner focuses on. What the Supreme Court went on to say is that the court can't foreclose the possibility that the evidence was insufficient to satisfy the burden of proof. Because what petitioner ignores is this is a statutory determination that, under the statute that guides the burdens of proof, credibility and sufficiency are separate concepts. Finding someone credible is not relevant. Finding someone adversely credible is not necessarily saying sufficiency. What you need are an analysis of sufficiency. And again, no one opinion is dispositive. An immigration judge, like any fact finder, is not required to simply say that opinion you've issued opinion, we're done. In fact, petitioner cites the Lopez-Reyes case for how personal conjecture is not a substitute for substantial evidence to support the agency's decision. The petitioner largely relies on opinions, which is a nice way to say conjecture, as it's suggesting that the record compels remersal. At the end of the day, the immigration judge considered all those evidence in the aggregate and found the evidence simply did not merit the burden of proof. Under this court's deferential standard of review, that is adequate and the record does not compel reversal. Unless the court has any further questions, we simply ask that the court deny the petition. Other questions from my colleague? I think not. Very well, thank you very much. Thank you, Your Honor. Ms. Misra. Good morning. Good morning. May it please the court. Priyanka Misra on behalf of Celia Alvarenga. I'd like to make just a few points. First, on the government's point about acquiescence, this court cannot affirm on the basis of a ground that the BIA did not reach, and the BIA did not reach a government acquiescence issue. Second, the government points to evidence about overmedication, and that overmedication practice was found in Iglesias Iglesias to be a sign of torture. And finally, Ming Dai has not overruled Castillo, and the government does not argue that the two cases are clearly irreconcilable. To the fourth point about acquiescence, this court cannot reach the acquiescence issue because the BIA did not reach. Excuse me. This court cannot affirm on the ground that the BIA did not reach. Well, with respect, I certainly understand we can't reach what the BIA didn't, but doesn't your client have the burden to show that there was acquiescence? Because failing that, you haven't met your burden of proof, have you? To clarify, Your Honor, about my statement, this court cannot affirm on a ground that the BIA did not reach, but it can reverse an acquiescence, and the evidence here is compelling on the acquiescence issue. Celia has brought evidence that, excuse me, the Iglesias Iglesias case held that there is a future acquiescence on a part of the government in torture in Mexican institutions. Wait a minute. So you're saying that our case law says that even though there's nothing to tie a governmental act to this petitioner, that based upon the general status of mental institutions in Mexico and the fact that the Mexican government has not brought them up to appropriate standards, that your client gets to benefit from government acquiescence? Is that what you're saying? Your Honor, this court held in Iglesias Iglesias that the evidence is strong that the government does acquiesce to the conditions in both public and private facilities in psychiatric institutions. And what is more, in Iglesias Iglesias, there was no past torture. Celia has been tortured in an institution, and she should benefit from that decision where there are very similar facts and there was evidence of acquiescence in a private facility in that case. And what is more, Celia has specific factors that make her particularly vulnerable. The government spoke about Celia's sobriety. However, she has relapsed continually during times of crisis and instability, including while she has held jobs in the past, and therefore the government's point about GED is unavailing here. And what is more, the government argues that Castillo has somehow been overruled, but the two cases, the government does not argue that the two cases are clearly irreconcilable. Furthermore, Castillo merely requires that the agency provide a reasoned explanation for giving reduced weight to expert testimony. And Ming Dai says the same. It says that its holding cannot mean that the BIA can arbitrarily reject a noncitizen's evidence, and Castillo merely requires such a reasonable explanation, which the agency did not provide here. That is a basic tenet of administrative law. Finally, this court has cited Castillo in cases. The BIA relied upon its reading of one of the reasons given by the IJ, which is that it was not so clear that the person we call petitioner was going to wind up institutionalized. The expert offered a different opinion on that, but I don't understand what it is that requires the IJ and subsequently the BIA to accept whatever opinion is offered by the expert. Your Honor, the agency and this court is not bound to accept the expert's testimony, but Castillo merely requires a reasonable explanation for giving that testimony reduced weight. Well, so what was deficient about the explanation that was given? It was discussed for a couple of pages of the IJ's decision. As an initial matter, Your Honor, the government does not argue that the explanation proffered by the agency was reasonable. And additionally, that explanation was based on the expert's reliance on credible facts that Celia provided. Castillo is directly on point here. In Castillo, the expert relied on facts provided by Castillo, the petitioner himself. There, the agency faltered the expert's testimony for the same reasons. So too here, where Dr. Garcia relied on facts that Celia provided in her declaration, and yet the agency gave reduced weight to that testimony because the expert had not personally met with Celia. Castillo is directly on point here. And this Court's precedent says that that is per se reversible legal error, and we argue that Celia is entitled to, at minimum, a remand on this legal error. Very well. Now your time is up. Let me ask my colleague whether or not he has additional questions. I think not. So the case of Alvarenga v. Garland is submitted. We again thank our law students from Berkeley Law School. We congratulate Ms. York for helping them out. And we think it's a great idea to have such fine lawyers in, what would you say in Spanish, in Roomba. You're in your way. And we hope you'll come and see us more often. What you're doing here for these petitioners, whether or not you're successful on their behalf, it's a vital part of our system to have people represented so that they have due process and every right that they're entitled to under the law is fully heard by the Court, and you play a vital role in that. So we congratulate you, and we thank you. So the case just argued is submitted, and the Court stands adjourned for the day. We invite Judge Sanchez to join us. All rise.
judges: CLIFTON, SMITH, Reiss